# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANNON N. KELLER, | |
| Plaintiff, | CIVIL ACTION NO. 3:23-cv-00662 |
| v. | (SAPORITO, C.M.J.) |
| MARTIN J. O'MALLEY,[1] Commissioner of Social Security, | |
| Defendant. | |

## MEMORANDUM

In this matter, the plaintiff, Shannon N. Keller, seeks judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. He has been automatically substituted in place of the original defendant, Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.   BACKGROUND

On October 26, 2020, Keller protectively filed applications for disability insurance benefits and supplemental security income, both asserting a disability onset date of March 5, 2019. Her claims were initially denied by state agency reviewers on March 31, 2021, and upon reconsideration on September 1, 2021. The plaintiff then requested an administrative hearing.

A video hearing was held on February 18, 2022, before an administrative law judge, Gerard W. Langan (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Paul A. Datti, Ph.D., and from the plaintiff's father, Brian Keller. The plaintiff was represented by counsel at the hearing.

On April 21, 2022, the ALJ denied Keller's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Keller was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process).

At step one, the ALJ found that Keller had not engaged in

substantial gainful activity since her alleged onset date.

At step two, the ALJ found that Keller had the severe impairments of: borderline personality disorder; major depressive disorder; bipolar disorder—type II; generalized anxiety disorder with severe panic attacks; psychogenic non-epileptic seizures; sacroiliac joint dislocation and sprain; spinal degenerative disc disease; dissociative identity disorder; and post-partum depression.

At step three, the ALJ found that Keller did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. In doing so, the ALJ considered Keller's limitations in four broad functional areas as a result of her mental disorders, finding mild limitations in one functional area—(1) understanding, remembering, or applying information—and moderate limitations in the other three— (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *See generally* 20 C.F.R. §§ 404.1520a(c), 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F)

(explaining process for using paragraph B criteria to evaluate mental impairments). In connection with listings 12.04 and 12.06, the ALJ also considered whether Keller's mental disorders were "serious and persistent," finding that her impairments had not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminished the symptoms and signs of her mental disorders, nor that she had achieved only marginal adjustment as a result. *See generally id.* § 12.00(G) (explaining process for using alternative paragraph C criteria to evaluate certain mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Keller's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Keller had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following limitations:

> [T]he claimant is able to understand, retain, and carry out routine and repetitive tasks with few workplace changes. She can engage in occasional decision-making. She should avoid fast, production rate pace work. Claimant should avoid interaction with the public, except for incidental contact. She can []engage

> in occasional interaction with co-workers and
> supervisors; however, she should avoid group, team, or
> tandem work activities.

Tr. 22.

In making these factual findings regarding Keller's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that, since her alleged onset date, Keller was unable to perform her past relevant work as a laborer, as actually or generally performed.

At step five, the ALJ concluded that Keller was capable of performing work that exists in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that

Keller was capable of performing the requirements of representative occupations such as production helper (DOT # 691.687-010), garnisher (DOT # 524.687-014), or final assembler (DOT # 713.687-018). Based on this finding, the ALJ concluded that Keller was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on March 1, 2023, making the ALJ's April 2022 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on April 20, 2023. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.  DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F.

Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Keller asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of non-examining state agency medical and psychological consultants, Moses Izuebu, M.D., Gaye Gustitus, D.O., Francis Murphy, Ph.D., and John Chiami, Ph.D.; and (2) the ALJ failed to properly evaluate the medical opinions of her treating psychologist, Sue LaBar Yohey, M.Ed., M.S.

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by

substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in October 2020. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, No. 20-CV-

00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, No. 20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 2021 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more

holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the

persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability), *and id.* §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency), *with id.* §§ 404.1527(c)(3), 416.927(c)(3) (supportability), *and id.* §§ 404.1527(c)(4), 416.927(c)(4) (consistency). An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

## A. State Agency Medical and Psychological Consultants

The ALJ considered the prior administrative findings in this case.

The prior administrative findings included the opinions of a state agency medical consultant, Moses Izuegbu, M.D., who had found the claimant capable of lifting or carrying up to 50 pounds occasionally and up to 25 pounds frequently. Dr. Izuegbu found that Keller was capable of sitting, standing, or walking up to six hours per 8-hour workday. Dr. Izuegbu additionally found that Keller was capable of frequent balancing, stooping, kneeling, crouching, crawling, or climbing of ramps, stairs, ladders, ropes, or scaffolds. Dr. Izuegbu opined that Keller should avoid concentrated exposure to machinery, heights, or other hazards, but he found no other environmental limitations and no manipulative, visual, or communicative limitations. Tr. 101–05, 125–29. In evaluating Dr. Izuegbu's opinions, the ALJ found that:

> Dr. Izuegbu's opinions are persuasive because, even though Dr. Izuegbu did not examine the claimant, he reviewed the claimant's treatment history. His opinions are consistent generally with the medical evidence indicating that the clinical findings and objective testing do not consistently show that the claimant suffers from significant declines in musculoskeletal functioning and use of the lower extremities and that the claimant's treatment for pain has consisted of medication management instead of considerably

invasive procedures.

Tr. 25–26.

The prior administrative findings included the opinion of a second state agency medical consultant, Gaye Gustitus, D.O., who reviewed Keller's medical records on administrative reconsideration. Dr. Gustitus found that there was insufficient evidence in the record before her to assess the claimant's RFC. Tr. 152, 175. The ALJ found Dr. Gustitus's opinion unpersuasive because the claimant had expanded the record with additional medical evidence after Gustitus had completed her review. Tr. 26.

The prior administrative findings also included the opinions of two state agency psychological consultants, Francis Murphy, Ph.D., and John Chiampi, Ph.D. Based on his review of Keller's medical records, Dr. Murphy found that the claimant's mental impairments cause no greater than moderate functional limitations in each of the paragraph "B" criteria.[2] Tr. 99, 123. With respect to concentration and persistence, Dr.

---

[2] Dr. Murphy found moderate limitations in Keller's ability to interact with others and her ability to concentrate, persist, or maintain pace, mild limitations in her ability to adapt or manage herself, and no limitations in her ability to understand, remember, or apply information.

Murphy found that Keller had no significant limitations in her ability to carry out either short and simple or detailed instructions, her ability to perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances, her ability to sustain an ordinary routine without special supervision, and her ability to make simple work-related decisions, and he found that Keller had moderate limitations with respect to her ability to maintain attention and concentration for extended periods, her ability to work in coordination with or in proximity to others without distraction, and her ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. With respect to social interaction, Dr. Murphy found that Keller had no significant limitations in her ability to ask simple questions or request assistance, and he found that Keller had moderate limitations in her ability to interact appropriately with the general public, her ability to accept instructions and respond appropriately to criticisms from supervisors, her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and her ability to maintain socially appropriate behavior and

to adhere to basic standards of neatness and cleanliness. Tr. 105–08, 129–32.

On reconsideration, Dr. Chiampi likewise found that the claimant's mental impairments cause no greater than moderate functional limitations in each of the paragraph "B" criteria.[3] Tr. 153, 176. With respect to concentration and persistence, Dr. Chiampi's findings echoed those of Dr. Murphy with one exception: Dr. Chiampi found that Keller had a marked limitation in her ability to carry out detailed instructions. With respect to social interaction, Dr. Chiampi's findings paralleled those of Dr. Murphy. Tr. 155–58, 178–81.

In evaluating the opinions of Dr. Murphy and Dr. Chiampi, the ALJ found that:

> [T]he foregoing opinions [are] persuasive with the exception of Dr. Murphy's opinion as to no limitation carrying out detailed instructions[,] and with the exception of Dr. Murphy['s] and Dr. Chiampi's opinions as to no considerable limitations adapting in the workplace, which the ALJ found unpersuasive in order to account for the claimant's ongoing need for

---

[3] Dr. Chiampi agreed with Dr. Murphy in finding moderate limitations in Keller's ability to interact with others and her ability to concentrate, persist, or maintain paid, and no limitations in her ability to understand, remember, or apply information. However, Dr. Chiampi disagreed with Dr. Murphy with respect to Keller's ability to adapt or manage herself, finding moderate limitations in this area.

> medication management and allegations that she struggles following through with tasks, managing stress, and handling changes. Drs. Murphy['s] and Chiampi's remaining opinions . . . are persuasive because, although Drs. Murphy and Chiampi did not have an opportunity to examine the claimant, they provided specific reasons for the remaining opinions about the claimant's limitations showing that these opinions are supported by the evidence of record, including careful consideration of the objective medical evidence and the claimant's allegations regarding symptoms and limitations. Their remining opinions are consistent with each other and are consistent with the medical evidence of record demonstrating a positive response to mental health treatment. Furthermore, Drs. Murphy and Chiampi had the advantage of reviewing the evidence from the claimant's consultative examination by Dr. Cole and therefore had a broad longitudinal perspective in issuing their opinions. Drs. Murphy and Chiampi's State agency opinions are consistent in part with Dr. Cole's above-discussed consultative examining opinions indicating that the claimant has no greater than moderate limitations with respect to understanding, remembering, and carrying our instructions and with respect to interacting appropriately with supervis[ors], co-workers, and the public and responding to changes in the routine work setting.

Tr. 27–28.

The plaintiff only addresses the evaluation of these particular medical opinions in passing. She appears to object to this evaluation of the state agency medical consultant's findings and opinions based solely on the fact that the state agency medical and psychological consultants

never actually examined Keller in person. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence to the extent the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

Accordingly, we find the ALJ's evaluation of the prior administrative findings concerning the plaintiff's physical and mental limitations, including the medical opinions of the state agency medical and psychological consultants, Dr. Izuegbu, Dr. Gustitis, Dr. Murphy, and Dr. Chiampi, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### B. Examining Psychologist Andrew Cole, Psy.D.

On March 5, 2021, Keller was seen and examined by consultative examining psychologist, Andrew Cole, Psy.D. On examination, Dr. Cole observed that the plaintiff was cooperative in demeanor and her manner of relating and overall presentation were fair. He found her appearance

to be normal. Dr. Cole observed rapid, fluent, and clear speech, with intact and adequate expressive and receptive language abilities. Dr. Cole found Keller's thought processes to be distractible and a little circumstantial, noting that she tended to provide excessive amounts of information rather than responding directly to questions. He found no evidence of hallucinations, delusions, or paranoia. Dr. Cole observed that Keller's affect and mood were anxious, her sensorium was clear, and her orientation was intact as to person, place, and time. He found Keller's attention and concentration to be mildly impaired due to anxiety, her recent and remote memory skills intact, and her overall intellectual functioning to be average with general fund of information appropriate to experience. Dr. Cole found Keller's insight to be good and her judgment to be good at the present time, though he noted that Keller reported inconsistent judgment during manic phases. Dr. Cole recorded mental health diagnoses of (a) bipolar I disorder, and (b) generalized anxiety disorder, with a fair prognosis given Keller's involvement in treatment and her long-standing symptoms. Tr. 1391–95.

Dr. Cole also completed an agency form report on Keller's ability to do work-related activities. In the area of understanding, remembering,

and carrying out instructions, Dr. Cole opined that, due to anxiety symptoms, Keller had mild limitations in her ability to understand, remember, and carry out simple or complex instructions or to make judgments on simple or complex work-related decisions. In the area of interacting with others, Dr. Cole opined that, due to depression and anxiety symptoms, Keller had moderate limitations in her ability to interact appropriately with supervisors, co-workers, or the general public, and mild limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. Dr. Cole noted, however, that Keller's symptoms may be exacerbated during manic phases, so her impairments may fluctuate. Dr. Cole found no impairments to Keller's ability to concentrate, persist, or maintain pace or her ability to adapt or manage herself. Tr. 1398–1400.

Upon review, the ALJ found that:

> Dr. Cole's findings and opinions are persuasive with the exception of his opinions as to carrying out complex instructions, responding to usual work situations, and responding to changes in a routine work setting, which the undersigned finds unpersuasive in order to account adequately for the claimant's allegations that she struggles focusing and following through with tasks. The residual functional capacity accordingly accounts for limitations that are more restrictive. As for Dr. Cole's remaining opinions, these remaining opinions

are persuasive because they are consistent with the medical evidence indicating that the claimant responded positively to mental health treatment. Dr. Cole's remaining opinions are also persuasive because these opinions are supported by Dr. Cole's clinical observations. Despite Dr. Cole's observations that the claimant reported having anxiety in social situations, Dr. Cole did not suggest that the claimant struggled with the pressures of the examination, described the claimants as cooperative and pleasant, and stated that the claimant maintained eye contact. Dr. Cole explained that the claimant discussed some memory deficits and appeared distractible due to being anxious, but Dr. Cole also reported that the claimant was able to discuss her medical history and some details about schooling and work history, spoke fluently, had clear sensorium, was fully oriented, remembered 3 of 3 objects immediately and after a delay, recalled 7 digits forward without error, recited 5 digits backwards without error, showed only mild impairment of attention and concentration, counted by twos, added, subtracted, multiplied, divided, and completed a serial 7 task. Dr. Cole additionally indicated that the claimant was dressed appropriately and well groomed, denied suicidal and homicidal thoughts, did not have evidence of hallucinations or delusions, and displayed good insight and judgment.

Tr. 26–27 (citations omitted).

The plaintiff does not appear to challenge the ALJ's evaluation of this medical opinion.[4]

---

[4] The plaintiff has noted in her brief that Dr. Cole's opinion indicated that the only prior record he reviewed was a copy of a Third-

*(continued on next page)*

## C. Examining Physician Robert W. Mauthe, M.D.

On January 8, 2020, Keller was seen by a physiatrist, Robert W. Mauthe, M.D., for an independent medical examination in connection with workers compensation proceedings. On examination, Dr. Mauthe observed that, although she presented wearing a CAM walker boot on her right side, Keller had normal gait and station. While she had restricted flexion and extension, Dr. Mauthe found no spasm and Waddell's testing was negative. Dr. Mauthe noted that a straight leg raise test was negative and motor and sensory exams were "essentially unremarkable." He found that hip rotation and sacroiliac joint provocative tests were positive on the right, and he found Gaenslen's test was also positive on the right, negative on the left. Dr. Mauthe recorded a diagnosis of sacroiliitis and opined that Keller "is unable to return to pre-injury job at this time." Tr. 963–64.

Upon review, the ALJ found Dr. Mauthe's opinion to be

> unpersuasive because he offers a minimally specific opinion and did not provide a function-by-function analysis of the claimant's limitations. However, to the

_____

Party Adult Function Report, presumably the one completed by Keller's father. *See* Tr. 424–33. But the plaintiff has failed to articulate any purported error in the ALJ's evaluation of Dr. Cole's opinion, which is clearly based on his interview and clinical examination of the plaintiff.

> extent that the doctor's opinion is limited to claimant's inability to perform her prior work, the undersigned finds this consistent with the complete record. The undersigned does not interpret this opinion as suggesting that the claimant could not perform work found within the above residual functional capacity.

Tr. 26.

The plaintiff does not appear to challenge the ALJ's evaluation of this medical opinion.[5]

### D. Treating Psychologist Sue LaBar Yohey, M.Ed., M.S.

On or about February 17, 2022, the plaintiff's treating psychologist, Sue LaBar Yohey, M.Ed., M.S., prepared a letter in support of Keller's application for disability benefits.[6] In her letter, addressed "to whom it may concern," LaBar Yohey noted that she had been treating Keller sporadically for eight months. LaBar Yohey reported diagnoses of anxiety with depression and borderline personality disorder, and she advised that she was working on a rather lengthy history for a psychological

---

[5] The plaintiff has noted in her brief that Dr. Mauthe performed a physical examination of Keller at the time, and that Dr. Mauthe recorded various clinical findings, none of which suggest any error in the ALJ's evaluation of Dr. Mauthe's opinion that Keller was unable to perform her prior work. As the ALJ pointed out, Dr. Mauthe did not articulate any medical opinions with respect to Keller's functional limitations.

[6] The letter is undated, but it includes a fax header with this date.

evaluation, which she expected would lead to an additional diagnosis of posttraumatic stress disorder. LaBar Yohey noted that Keller had a significant trauma history, having spent most of her adolescence in psychiatric facilities and juvenile detention, and that Keller had a number of issues that prevented her from performing unspecified activities of daily living, including habits from her adolescence and being overwhelmed by daily life events. LaBar Yohey opined that Keller was

> currently overwhelmed by life to the point that she has no attention or energy to maintain a job. She is invested in therapy and still often misses appointments. Her mental health concerns are such that they require intensive therapy. Employment would only interfere [with her] journey to mental health and any attempt in the near future could be expected to fail.

Tr. 1952.

Upon review, the ALJ found that:

> Even though Ms. [LaBar] Yohey treated the claimant, her assessment is unpersuasive because it is inconsistent with the claimant's medical records. As discussed above, a broad view of the claimant's medical records reveals an overall favorable response to treatment. Ms. [LaBar] Yohey's assessment additionally is inconsistent with the opinions offered by Drs. Cole, Murphy, and Chiampi, who described only mild or moderate functional limitations. Ms. [LaBar] Yohey's assessment further is general in nature because it does not contain a detailed function-by-

function analysis.

Tr. 28.

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. He expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of this opinion as well.

In her brief, the plaintiff summarizes the evidence in great detail and appears to argue that the ALJ's decision should be reversed because some of this evidence contradicts the ALJ's findings. But it is the exclusive province of the ALJ, not this court, to resolve conflicting evidence. "In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for that of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams*, 970 F.2d at 1182); *see also Stancavage v. Saul*, 469 F. Supp. 3d 311, 334 (M.D. Pa. 2020). Moreover, to the extent the plaintiff has suggested that the ALJ's failure to discuss particular items of evidence, it is well settled that an ALJ is not required to discuss *every* detail of the record evidence cited in his opinion. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008). "A written evaluation of

every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." *Philips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004) (citation omitted). While the evidence cited by the plaintiff on appeal might reasonably support a different conclusion with respect to the persuasiveness of LaBar Yohey's medical opinion, it does not compel it.

Accordingly, we find the ALJ's evaluation of the opinion of the plaintiff's treating psychologist, Sue LaBar Yohey, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.  CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Keller was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits and supplemental security income is **AFFIRMED**.

An appropriate order follows.


Dated: August 19, 2024                    *s/Joseph F. Saporito, Jr.*
                                          JOSEPH F. SAPORITO, JR.
                                          Chief United States Magistrate Judge